**In the ESTATE OF: Ronald Steven BLAIR, Deceased,**

**Sean Blair, Claimant–Appellant,**

**v.**

**Sharon Blair, Respondent–Respondent.**

**No. SD 29688.**

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 2010.

Motion for Rehearing or Transfer Denied
May 24, 2010.

Application for Transfer Denied
Aug. 31, 2010.

Greggory Dean, Groves, Springfield, MO, for Appellant.

James M. Owen, Springfield, MO, for Respondent.

JEFFREY W. BATES, Presiding Judge.

Sean Blair (Sean) appeals from a decree of final distribution entered in the estate of his father, Ronald Blair (Ronald).[1] The trial court decided that a tract of real estate included in the inventory was not part of the estate because title to that property vested in Sharon Blair (Sharon), upon Ronald's death. The judgment is affirmed.

 In this court-tried case, our review is governed by Rule 84.13(d) and the principles articulated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[2] This Court must affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Salem United Methodist Church v. Bottorff*, 138 S.W.3d 788, 789–90 (Mo.App.2004). The trial court's ruling on questions of law is reviewed *de novo*. *Strader v. Progressive Ins.*, 230 S.W.3d 621, 623 (Mo.App.2007). "We review the evidence and all reasonable inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Arndt v. Beardsley*, 102 S.W.3d 572, 574 (Mo.App. 2003). We defer to the trial court's determination of witness credibility and recognize that the court is free to accept or reject all, part or none of the testimony presented. *Christian Health Care of Springfield West Park, Inc. v. Little*, 145 S.W.3d 44, 48 (Mo.App.2004). Our summary of the evidence, which is set forth below, has been prepared in accordance with these principles.

Ronald and Sharon were married in 1986. During their marriage, they acquired a tract of real estate located on Bunker Hill Road in Strafford, Missouri (the Strafford property). There were times during the marriage when the couple separated. Just before one such separation in November 1998, Ronald asked Sharon to sign a quitclaim deed to the Strafford property. In relevant part, this deed stated:

**QUITCLAIM DEED**

THIS INDENTURE, Made on the 13th day of November, 1998 by and between Sharon E. Blair, wife of Ronald Steven Blair of the County of Webster and State of Missouri Party of the First Part and Ronald Steven Blair, husband of Sharon E. Blair of the County of Web-

---

1. Because all three persons mentioned in this opinion share the same surname, we will refer to each by his or her given name. We do so for purposes of clarity and intend no disrespect.

2. All references to rules are to the Missouri Court Rules (2009). All references to statutes are to RSMo (2000) unless otherwise specified.

ster and State of Missouri party of the Second Part [mailing address omitted]

WITNESSETH, That the said party of the First Part, in consideration of the sum of Ten and No/ 100 DOLLARS to her paid by the said party of the Second Part, the receipt of which is hereby acknowledged, do by these presents remise, Release and forever Quit–Claim, unto the said party of the Second part, the following described Lots, Tracts or Parcels of Land, lying, being and situate in the County of Webster and State of Missouri to wit:

[legal description of the Strafford property omitted].

TO HAVE AND TO HOLD the same, with all the rights, immunities, privileges and appurtenances thereto belonging unto the said party of the Second Part, and his heirs and assigns FOREVER, so that neither the said party of the First Part, nor her heirs or any other person or persons for her or in her name or behalf, shall or will hereafter claim or demand any right or title to the aforesaid premises or any part thereof, but she and everyone for her shall, by these presents, be excluded and forever barred.

IN WITNESS WHEREOF, the said party of the first part has hereunto set her hand and seal the day and year first above written.

This deed was signed by Sharon on November 13, 1998 and recorded three days later.

Ronald and Sharon separated for the last time around January 2005. For the next 30 months, the couple lived apart. Sharon had no intention of returning to live with Ronald. From approximately July 2005 through July 2007, Sharon was dating and having sexual relations with another man.

Ronald died intestate on July 7, 2007. In August 2007, Sharon filed an application requesting the issuance of letters of administration to her as surviving spouse. That same month, the court granted the request and issued the letters. In November 2007, the Strafford property was listed as an asset of Ronald's estate in an inventory that Sharon filed in her capacity as personal representative.

In January 2008, Sharon filed: (1) a petition asking that certain exempt personal property be set over to her as surviving spouse; and (2) an application for a $25,000 family allowance paid from the estate to her as surviving spouse. In the latter application, Sharon stated "that she and decedent were married at the time of his death and that she had a marital interest in the real estate inventoried in the estate...." Sharon requested the trial court to set over to her the Strafford property as her sole property and to award her a "fee simple interest" in the real estate.

In response, Sean filed a claim and a request for a declaratory judgment. Sean alleged that, by executing the quitclaim deed, Sharon had waived and relinquished all rights in the Strafford property, including any rights of inheritance and statutory rights with respect to that land. Sean further alleged that the Strafford property became his upon Ronald's death, as provided by law. The prayer for relief requested the trial court to declare that the Strafford property belonged to Sean and that no one else, including Sharon, had any interest in the property.

In June 2008, the trial court held an evidentiary hearing on Sharon's statutory claims and Sean's request for declaratory relief. With respect to Sharon's statutory claims, the court found these were barred by § 474.140 RSMo Cum.Supp. (2007) because Sharon had been voluntarily sepa-

rated from Ronald and living in a continuous state of adultery with another man for two and one-half years prior to Ronald's death. With respect to Sean's request for declaratory relief, the court found that the quitclaim deed to the Strafford property did not extinguish the tenancy by the entirety and that the property passed to Sharon by operation of law upon Ronald's death. The court ordered that the Strafford property be stricken from the estate's inventory and appraisement, and that the order be recorded to establish that Sharon was the proper titleholder of the Strafford property. In February 2009, the court approved the final settlement and entered a decree of distribution. Sean appealed and presents two points of alleged error.

■ As a preliminary matter, we first must address Sharon's motion to dismiss this appeal. Sharon contends that Sean was obligated to appeal from the June 2008 order and, therefore, his notice of appeal was untimely. This argument has no merit. While Sean could have permissively appealed from the order pursuant to § 472.160, he was not required to do so. *In re Estate of Straszynski*, 265 S.W.3d 394, 396 (Mo.App.2008). Sean retained the right to appeal from the decree of final distribution. *Id.*; *In re Estate of Givens*, 234 S.W.3d 519, 521 (Mo.App.2007). Because he did so in a timely fashion, the motion to dismiss is denied.

■ In Sean's first point, he contends the trial court erred in removing the Strafford property from Ronald's estate. Sean argues that this ruling was a misapplication of the law because the parties did not question ownership of the property or seek to have it removed from the estate. Sean asserts the trial court decided an issue that had not been pled and cites *Brock v. Blackwood*, 143 S.W.3d 47 (Mo.App.2004), to support his request for reversal.

*Brock* does not support Sean's argument. There, one count of the plaintiffs' petition sought to terminate their Gifttrusts early pursuant to § 456.590.2. *Id.* at 52. In ruling on that count, the trial court went beyond the early termination issue and decided all of the Gifttrusts were a nullity because they had been improperly created. *Id.* at 53. The western district of this Court held that the trial court's ruling was erroneous because the plaintiffs' petition did not allege any facts in support of voiding the Gifttrust ab initio. *Id.* at 61.

The case at bar is distinguishable. Sharon's application for a family allowance specifically pled that she and Ronald were married when he died and that Sharon had a "marital interest" in the Strafford property. She asked that the property be awarded to her as her sole property. As Ronald's heir, Sean had a right to request a declaration of rights or legal relations with respect to any question arising in the administration of Ronald's estate. § 527.040. He filed a petition asking for just such relief. The petition alleged that, by executing the quitclaim deed, Sharon had waived and relinquished all rights in the Strafford property. A copy of the quitclaim deed was attached to the petition. Sean further alleged that the Strafford property became his upon Ronald's death, as provided by law. The prayer for relief requested the trial court to declare that the Strafford property belonged to Sean and that no one else, including Sharon, had any interest in the property. Thus, Sean specifically placed the issue of who owned the Strafford property before the trial court. The facts necessary to make that determination came directly from Sean's petition, in the form of the quitclaim deed. In order to determine whether Sharon had relinquished all interest in the Strafford property by executing the quitclaim deed, the trial court had to

decide what interest, if any, the deed conveyed to Ronald. Point I is denied.

In Point II, Sean contends the trial court misapplied the law by deciding that the quitclaim deed executed by Sharon was ineffective to vest sole ownership of the property in Ronald. Sean argues that the quitclaim deed was effective to destroy the tenancy by the entirety and vest Ronald with the entire estate. He cites *Clark v. Clark*, 644 A.2d 449, 453 (D.C.App.1994), and *Donvito v. Criswell*, 1 Ohio App.3d 53, 439 N.E.2d 467, 474 (1982), to support his argument.

Although Sean accurately describes the holdings in these out-of-state cases, the principles applied therein are incompatible with controlling Missouri law. "The distinctive characteristic of an estate by the entirety is that it is deemed to be owned by a single entity, the marital community." *U.S. Fidelity and Guar. Co. v. Hiles*, 670 S.W.2d 134, 137 (Mo.App.1984). In other words, "each spouse is seized of the whole or entirety and not of a share, moiety or divisible part." *Stewart v. Shelton*, 356 Mo. 258, 201 S.W.2d 395, 398 (1947). For this reason, "neither spouse has any right, title or interest which may be conveyed, encumbered or devised by his or her *sole* act. . . ." *Id.* (italics in original); *see also* WILLARD L. ECKHARDT, POSSESSORY ESTATES, FUTURE INTERESTS AND CONVEYANCES IN MISSOURI § 40 (West 1986) (neither spouse can convey any interest held by the entirety unless the other spouse joins in the conveyance); 4A RICHARD R. POWELL, THE LAW OF REAL PROPERTY ¶ 622[4] (1st ed. 1949 & Supp.1992) (both spouses acting in concert can convey their tenancy by the entirety, but neither acting alone may do so).

In the case at bar, Sharon was the only grantor named in the quitclaim deed. "A deed by only one of two tenants by the entirety conveys nothing." *Ethridge v. Tierone Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007). As the trial court correctly held, a deed by one of the tenants alone is void. *Austin & Bass Builders, Inc. v. Lewis*, 359 S.W.2d 711, 714 (Mo. banc 1962); *Mahen v. Ruhr*, 293 Mo. 500, 240 S.W. 164, 166 (1922).[3] Point II is denied.

The judgment of the trial court is affirmed.

BARNEY and BURRELL, JJ., concur.

---

**3.** If both spouses are named as grantors in the conveyance, Missouri law does authorize real property jointly owned as tenants by the entirety to be conveyed to one spouse as his or her separate property. *See* § 442.025.2 (authorizing two married persons to convey real estate by a conveyance naming one of them as grantee so as to create separate ownership); *Townsend v. Townsend*, 708 S.W.2d 646, 650 (Mo. banc 1986).