John Randolph BAKEWELL,
Appellant,

v.

Laurie K. BREITENSTEIN, Successor Trustee of the Janice M. Bakewell Living Trust Dated July 2, 2010, Respondent,

Jerry D. Lawson, Trustee For
CitiFinancial Services,
Inc.; Respondent,

John Randolph Bakewell, Personal Representative Of The Estate Of Janice M. Bakewell, Deceased, Respondent.

No. WD 75341.

Missouri Court of Appeals,
Western District.

March 5, 2013.

John Randolph Bakewell, Appellant Pro Se.

David G. Bandre, Jefferson City, MO, for respondent Laurie K. Breitenstein.

Matthew A. Clement, Jefferson City, MO, for respondent Jerry Lawson.

Before Division Three: Cynthia L. Martin, Presiding Judge, Joseph M. Ellis, Judge and Gary D. Witt, Judge

CYNTHIA L. MARTIN, Judge.

This appeal involves the effect of a judicial decree of legal separation on the property rights of a spouse following the death of the other spouse.

Following the death of Janice M. Bakewell ("Ms. Bakewell"), John Bakewell ("Mr. Bakewell") filed a declaratory judgment action against Laurie Breitenstein ("Breitenstein"), successor trustee of Ms. Bakewell's living trust, and Jerry Lawson ("Lawson"), trustee on a deed of trust executed by Ms. Bakewell in favor of CitiFinancial Services, Inc. Mr. Bakewell sought a declaration that he was the lawful owner of real estate awarded to Ms. Bakewell in a legal separation judgment prior to her death. Breitenstein counterclaimed and sought a declaration that Ms. Bakewell's living trust was the lawful owner of a deferred compensation account awarded to Ms. Bakewell in the legal separation judgment. The trial court granted summary judgment finding Mr. Bakewell possessed no rights in the real estate and declaring the living trust to be the owner of the deferred compensation account. Mr. Bakewell appeals, *pro se*.

We affirm.

## Factual and Procedural History[1]

The material facts are not in dispute. In 1977, Mr. and Ms. Bakewell married. In 1989, Mr. and Ms. Bakewell purchased a home located at 241 Fredricks Lane, Jefferson City, Missouri ("the Real Estate"). In 2004, Ms. Bakewell filed for legal separation from Mr. Bakewell. On February 17, 2005, the Cole County Circuit Court entered a judgment and decree of legal separation ("the Separation Judgment"), in which the trial court approved a property settlement agreement and divided the marital property and debts between Mr. Bakewell and Ms. Bakewell.[2]

Pursuant to the Separation Judgment, Ms. Bakewell was awarded the Real Estate and her "PEBSCO deferred compensation plan" ("the Deferred Compensation Account") as her sole and separate property. The Separation Judgment provided that Mr. Bakewell "shall have no right, title, or interest" in the Real Estate or the Deferred Compensation Account. Similarly, the Separation Judgment awarded Mr. Bakewell certain property as to which Ms. Bakewell was ordered to "have no right, title, or interest."

The Separation Judgment also generally ordered the parties to "execute appropriate deeds, quit-claims, and such certificates of title or other documents as are necessary to show sole ownership of the items of real and personal property awarded to each herein." On February 28, 2005, Mr. Bakewell executed a quitclaim deed ("Quitclaim Deed"), wherein Mr. Bakewell, "in conformance with [the Separation Judgment]," agreed to "Remise, Release and forever Quit–Claim" the Real Estate to Ms. Bakewell "so that neither [Mr. Bakewell] nor his heirs ... shall or will hereafter claim or demand any right or title to the [Real Estate], but they, and every one of them shall, by these presents, be excluded and forever barred." The Quitclaim Deed was recorded on July 8, 2005.

In 2008, CitiFinancial Services, Inc. ("CitiFinancial") extended credit to Ms. Bakewell in the principal sum of $47,100.62. Ms. Bakewell executed a deed of trust ("Deed of Trust") in favor of CitiFinancial granting it a lien on the Real Estate to secure payment. Lawson is the trustee on the Deed of Trust.

On July 2, 2010, Ms. Bakewell conveyed the Real Estate by deed ("Deed") into the "Janice M. Bakewell as Trustee of the 'Janice M. Bakewell Living Trust Dated July 2, 2010' " ("Trust").[3] The Deed was recorded on July 6, 2010. Breitenstein is the successor trustee of the Trust.

1. The facts are taken in part from our reported decision in *Bakewell v. Breitenstein*, 363 S.W.3d 353 (Mo.App. W.D.2012), an earlier appeal by Mr. Bakewell from a partial summary judgment. We dismissed that appeal as premature.

2. Mr. Bakewell's petition for declaratory judgment claims that Mr. Bakewell did not enter into a written separation agreement dividing marital property. However, the Separation Judgment unambiguously reflects that the parties announced a settlement at a pretrial conference, whereupon evidence was introduced, the settlement stipulation was entered into the record, and Mr. Bakewell's counsel was directed to submit a written judgment. The Separation Judgment then states: "The parties are possessed of certain items of real and personal property acquired during the marriage; and the Court *approves the property settlement agreement* as fair and not unconscionable as was agreed between the parties and which agreement was verbally entered into evidence[.]" (Emphasis added.) Moreover, notwithstanding the assertion in his petition, Mr. Bakewell's second point on appeal inconsistently refers to "the court approved [settlement] agreement."

3. This Deed was not included in the record on appeal. However, the fact of conveyance of the Real Estate by Ms. Bakewell to the Trust is not contested by either party.

On July 10, 2010, Ms. Bakewell died.[4] At the time of Ms. Bakewell's death, she and Mr. Bakewell were still married, notwithstanding their legal separation pursuant to the 2005 Separation Judgment.

On August 30, 2010, Mr. Bakewell filed a declaratory judgment against Breitenstein, as successor trustee of the Trust, and against Lawson, as trustee for CitiFinancial on the Deed of Trust.[5] Mr. Bakewell sought to void the Quitclaim Deed, the Deed of Trust, and the Deed, and sought a declaration that he was the lawful owner of the Real Estate. Mr. Bakewell claimed that the Quitclaim Deed, which had not named Ms. Bakewell as a grantor, failed to lawfully convey his interest in the Real Estate because it was owned by he and Ms. Bakewell as tenants by the entirety. Mr. Bakewell thus claimed that Ms. Bakewell's subsequent conveyances via the Deed of Trust and the Deed were void because he had never waived his inheritance and statutory rights as a surviving spouse in the manner required by section 474.120.[6]

Breitenstein counterclaimed seeking a declaration that the Deferred Compensation Account was the property of the Trust.[7]

Mr. Bakewell, Breitenstein, and Lawson filed competing motions for summary judgment addressing the claims asserted in Mr. Bakewell's petition.[8]

On April 7, 2011, the trial court entered a partial summary judgment finding, in pertinent part:

3. *[Mr. Bakewell] was divested of his title and interest in said Real Estate as a result of the [Separation Judgment] entered by this court[.]* While better practice would have been to include the legal description of the Real Estate in that judgment, *the execution of [the Quitclaim Deed] by [Mr. Bakewell], the same required of him by said judgment, divests him of any claim of marital interest.*

4. Defendants Breitenstein and Lawson are entitled to judgment as a matter of law as to the issue of ownership of the Real Estate and the validity of the claims of the Janice M. Bakewell Living Trust dated July 2, 2010 and CitiFinancial Services, Inc.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

5. Defendants Breitenstein and Lawson are hereby granted summary judgment in their favor on the issues of extinguishment of any claim of [Mr. Bakewell] to the Real Estate. *Following the [Separation Judgment], and the execution and filing of the [Quitclaim Deed] recorded with the Recorder of Deeds for Cole County, Missouri ... the Real Estate became the sole and separate property of [Ms. Bake-*

---

4. In *Bakewell*, 363 S.W.3d at 354, we state that Ms. Bakewell died on July 19, 2010. However, in their briefs on appeal both Mr. Bakewell and Breitenstein state that Ms. Bakewell died on July 10, 2010. This discrepancy is immaterial to the issues raised in this appeal.

5. Mr. Bakewell also named himself as a defendant in his capacity as the personal representative of the Estate of Janice M. Bakewell, Deceased, pursuant to letters of administration issued him on August 17, 2010.

6. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

7. A copy of the counterclaim is not included in the record on appeal.

8. Mr. Bakewell's motion for summary judgment is not included in the record on appeal. Lawson joined in and incorporated Breitenstein's motion for summary judgment in his motion for summary judgment.

*well].   [Mr.   Bakewell]   has   no   right,
title   or   interest   to   the   Real   Estate.*

(Emphasis added.)

On May 2, 2011, Mr. Bakewell appealed. While his appeal was pending, Breitenstein filed a motion for summary judgment on her counterclaim regarding the Deferred Compensation Account.   Breitenstein asserted that the Separation Judgment awarded the Deferred Compensation Account [9] to Ms. Bakewell, that Ms. Bakewell subsequently named the Trust as the transfer on death owner of the Deferred Compensation Account, but that absent a court order, the company managing the Deferred Compensation Account would not honor the transfer on death designation.

On February 21, 2012, we dismissed Mr. Bakewell's appeal because the partial summary judgment entered by the trial court. was not a final judgment for purposes of appeal.   *Bakewell v. Breitenstein,* 363 S.W.3d 353 (Mo.App. W.D.2012).

On May 25, 2012, the trial court entered summary judgment ("Judgment") granting Breitenstein's counterclaim by declaring that Mr. Bakewell "retains and holds no ownership or marital interest" in Ms. Bakewell's Deferred Compensation Account and that the Trust is the true and rightful owner of the Deferred Compensation Account.   The Judgment also entered judgment in favor of Breitenstein and Lawson on all of Mr. Bakewell's claims by incorporating the partial summary judgment previously entered by the trial court by reference.

Mr. Bakewell appeals.

### Standard of Review

" 'When considering appeals from summary judgments, [we] will review the record in the light most favorable to the party against whom judgment was entered.' " *State ex rel. Ad Trend, Inc. v. City of Platte City,* 272 S.W.3d 201, 203 (Mo.App. W.D.2008) (quoting *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993)). " 'Our review is essentially *de novo.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially.' " *Id.* (citation omitted).   " 'Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Sauvain v. Acceptance Idem. Ins. Co.,* 339 S.W.3d 555, 568 (Mo.App. W.D. 2011) (citation omitted).

### Analysis

Mr. Bakewell asserts five points on appeal.[10]   In his first three points, Mr. Bakewell alleges that the trial court erroneously "reformed" the Quitclaim Deed. In his fourth point, Mr. Bakewell alleges that the trial court erroneously failed to void the Deed of Trust.   In his fifth point, Mr. Bakewell alleges that the trial court erroneously declared the Deferred Compensation Account to be Trust property.

### *Points I, II, & III*

In his first three points on appeal, Mr. Bakewell claims that the trial court erred in "reforming" the Quitclaim Deed.   The

---

9.   In her motion, Breitenstein states that Ms. Bakewell converted her PEBSCO account to an ING account and that prior to her death Ms. Bakewell named the Trust as the transfer on death owner of the ING account.   Although the record on appeal does not include supporting documentation for these allega-

tions, they are not challenged by Mr. Bakewell.

10.   Mr. Bakewell labeled his Points Relied On as Points A through E. We refer to them in the same order but numerically.

import of these points is an assertion that the trial court exceeded its jurisdiction or contravened existing law by treating the Quitclaim Deed as legally effective to convey Mr. Bakewell's interest in the Real Estate to Ms. Bakewell. We conclude that because Mr. Bakewell was divested of all right, title, and interest in the Real Estate by the Separation Judgment, Mr. Bakewell's challenge to the legal effectiveness of the Quitclaim Deed is rendered immaterial.

■■■ "In Missouri, a conveyance of real property to a husband and wife as co-grantees is presumed to create a tenancy by the entirety if there are no limiting words in the operative clauses of the deed." *Ronollo v. Jacobs*, 775 S.W.2d 121, 123 (Mo. banc 1989). In a tenancy by entirety, "[e]ach spouse is seized of the whole or entirety and not a share, moiety or divisible part. Thus, neither spouse owns an undivided half interest in entirety property; the whole entirety estate is vested and held in each spouse and the whole continues in the survivor." *Id.* (internal citation omitted). Given the distinctive characteristic of a tenancy by the entirety such that the estate is deemed owned by a single entity, " 'neither spouse has any right, title or interest which may be conveyed, encumbered or devised by his or her *sole* act....' " *US Bank Nat'l Assoc. v. Cox*, 341 S.W.3d 846, 855 (Mo.App. W.D.2011) (quoting *Stewart v. Shelton*, 356 Mo. 258, 201 S.W.2d 395, 398 (1947)) (emphasis in original); see also WILLARD L. ECKHARDT, POSSESSORY ESTATES, FUTURE INTERESTS AND CONVEYANCES IN MISSOURI section 40 (West

1986) (neither spouse can convey any interest held by the entirety unless the other spouse joins in the conveyance).[11]

Prior to the entry of the Separation Judgment, it is not contested that Mr. and Ms. Bakewell held the Real Estate as tenants by the entirety.[12] It is also not contested that the Quitclaim Deed Mr. Bakewell executed following the Separation Judgment identified only Mr. Bakewell as a grantor, and was not executed by Ms. Bakewell as a grantor.

■■■ Mr. Bakewell thus correctly argues that *in the ordinary course*, "[s]o long as spouses remain married ... a tenancy by the entirety may be terminated or severed only by joint and mutual action on the part of husband and wife." *Ronollo*, 775 S.W.2d at 123. Thus, "[a] deed by only one of two tenants by the entirety conveys nothing." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 132 (Mo. banc 2007). This principle has been consistently applied to void a conveyance instrument executed by only one tenancy by the entirety spouse. *See, e.g., Austin & Bass Builders, Inc. v. Lewis*, 359 S.W.2d 711, 714 (Mo. banc 1962); *US Bank*, 341 S.W.3d at 855. Specifically relevant to this case, this principle has been applied to void a quitclaim deed wherein one tenancy by the entirety spouse purports to transfer his or her interest to the other. *Blair v. Blair*, 317 S.W.3d 84, 89 (Mo.App. S.D. 2010).

■■■ In reliance on this line of authority, Mr. Bakewell argues that the Quitclaim Deed he executed in favor of Ms. Bakewell had no legal effect because Ms. Bakewell

**11.** Section 442.025 recognizes this legal principle as, among other things, it authorizes married persons to convey real estate in a conveyance instrument naming both as grantors and one spouse as grantee as to destroy the tenancy by the entirety.

**12.** The deed conveying the Real Estate to Mr. and Ms. Bakewell is not included in the record on appeal. However, it is not contested that the Bakewells held the Real Estate as tenants by the entirety prior to the entry of the Separation Judgment.

did not execute the deed as a co-grantor. Mr. Bakewell's argument fails to take into consideration that a tenancy by the entirety estate can also be destroyed by judicial decree.

■ It has long been recognized that "[t]he divorce of tenants by the entirety destroys the tenancy and converts it into a tenancy in common." *Ronollo*, 775 S.W.2d at 123 (citing *Allan v. Allan*, 364 S.W.2d 578, 582 (Mo.1963)). This effect is automatic, notwithstanding the absence of a mutually executed conveyance document. *Jones v. Jones*, 325 Mo. 1037, 30 S.W.2d 49, 55 (1930) ("Upon the dissolution of the marital status, *by the divorce decree,* each of the parties immediately was vested with an undivided one-half interest and moiety in and to the [tenancy by the entirety property], as tenants in common[.]") (emphasis added).

■ Similarly, the legislature has empowered courts to destroy tenancy by the entirety estates as a part of marital property divisions. Section 452.330.1 provides that in proceedings for "dissolution of the marriage *or legal separation* . . . the court *shall set apart* to each spouse such spouse's nonmarital property and *shall divide* the marital property and marital debts in such proportions as the court deems just after considering all relevant factors[.]" (Emphasis added.) Our Supreme Court has held that this charge may be accomplished with respect to marital real estate either by including language in a decree sufficient to convey title without further action by the parties, or by ordering spouses to execute deeds of conveyance subject to enforcement by a "supplemental order decreeing the transfer of title or . . . by contempt." *DeWitt v. American Family Mut. Ins. Co.*, 667 S.W.2d 700, 706 (Mo. banc 1984). In recognition of the fact that a decree can independently operate to effect legal transfer of title to real estate,

section 452.330.6 provides that "[a] certified copy of *any decree of court affecting title to real estate* may be filed for record in the office of the recorder of deeds of the county and state in which the real estate is situated by the clerk of the court in which the decree was made." *See Ricklefs v. Ricklefs*, 39 S.W.3d 865, 879–80 (Mo.App. W.D.2001); *Douglas–Hill v. Hill*, 1 S.W.3d 613, 622 (Mo.App. W.D.1999). Likewise, Rule 74.07 provides, in pertinent part:

> If real or personal property is within the state, the court may enter a judgment divesting the title of any party and vesting it in others in lieu of directing a conveyance thereof, and such judgment has the effect of a conveyance executed in due form of law.

*See Thompson v. Chase Manhattan Mortgage Corporation*, 90 S.W.3d 194, 202 (Mo. App. S.D.2002) (holding that pursuant to Rule 74.07, decree may direct party to sign and deliver quitclaim deed but may also independently divest party of ownership interest); *Bridgeman v. Bridgeman*, 63 S.W.3d 686, 693 (Mo.App. E.D.2002).

■ Thus, the preliminary question before us is whether the Separation Judgment independently divested Mr. Bakewell of title in the Real Estate without need for further action by the parties. If so, then Mr. Bakewell is foreclosed from claiming an interest in the Real Estate as a matter of law, as "[a] judgment of dissolution of marriage or of legal separation is final when entered" and "as it affects distribution of marital property shall be a final judgment not subject to modification." Section 452.360. *See also In re Marriage of Green*, 341 S.W.3d 169, 174 (Mo.App. E.D.2011) ("A party cannot seek redistribution of property covered by [a] decree."); section 452.330.5 ("The court's order as it affects distribution of marital property shall be a final order not subject to modification[.]"). And if so, Mr. Bakewell's com-

plaint as to the legal effectiveness of the Quitclaim Deed is rendered immaterial.

Here, the trial court found in its partial summary judgment (the totality of which was incorporated by reference into the Judgment) that "[Mr. Bakewell] was divested of his title and interest in said Real Estate as a result of the [Separation Judgment] entered by this court[.]" The Separation Judgment provided, in pertinent part:

> The parties are possessed of certain items of real and personal property acquired during the marriage; and the Court approves the property settlement agreement as fair and not unconscionable as was agreed between the parties[.]
>
> . . . .
>
> [T]here is a compelling need based upon the circumstances of the parties and their marriage that all marital property be *fully and finally divided* and that a Judgment and Decree of Legal Separation be entered.
>
> . . . .
>
> (3) Division of Property and allocation of Debts:
>
> (a) [Ms. Bakewell] *is awarded* the following items of real and personal property as her *sole and separate property,* and *[Mr. Bakewell] shall have no right, title or interest therein,* to wit:
>
> | Item | Fair Market Value |
> | --- | --- |
> | [The Real Estate] | $110,000 |
>
> . . . .
>
> Total:   $314,709
>
> . . . .
>
> (b) [Mr. Bakewell] is awarded the following items of real and personal property as his sole and separate property, and [Ms. Bakewell] shall have no right, title or interest therein, to wit:
>
> . . . .
>
> Total:   $171,442
>
> . . . .
>
> (c) The following items are set off to [Mr. Bakewell] as his separate, non-marital property, and [Ms. Bakewell] shall have no right, title or interest therein, to wit:
>
> . . . .
>
> Total:   $291,800
>
> . . . .
>
> (d) Each party shall pay all debts associated with property awarded to him or her herein and shall hold the other harmless from any liability therefore. (e) Each party shall execute appropriate deeds, quit-claims, and such certificates of title or other documents as are necessary *to show* sole ownership of the items of real and personal property awarded to each herein.

(Emphasis added.)

We agree with the trial court's legal conclusion that the Separation Judgment clearly operated to convey the Real Estate to Ms. Bakewell without the requirement of additional action by the parties. The Separation Judgment awarded the Real Estate to Ms. Bakewell and declared Mr. Bakewell to have no further interest in the Real Estate. The Separation Judgment thus extinguished the tenancy by the entirety in the Real Estate.

It is true that in addition to including language sufficient to convey title in the Real Estate without further action by the parties, the Separation Judgment also ordered the Bakewells to execute deeds of conveyance. Although *DeWitt* recognizes that either mechanism may be used to effect a division of marital property, we are aware of no authority which holds that if both mechanisms are included in a decree, the decree cannot be treated as inde-

pendently sufficient to convey title. 667 S.W.2d at 706. Moreover, the directive in the Separation Judgment to execute "appropriate deeds, quit-claims, and such certificates of title or other documents as are necessary *to show* sole ownership of the items of real and personal property *awarded to each* herein" merely required the exchange of documentation to *demonstrate* ownership, not to *establish* ownership. (Emphasis added.) Thus, the order to exchange deeds and titling documents was superfluous to the Separation Judgment's legally effective award of title to the Real Estate without further action by the parties.

▆▆▆▆ We are also aware that the Separation Judgment did not include a legal description for the Real Estate, an omission noted by the trial court in the Judgment. A decree of dissolution or legal separation which intends to operate as a present conveyance of real estate should contain a full legal description " 'to ensure that the filing of the decree with the recorder of deeds is effective in dispelling future questions as to land title.' " *Ricklefs*, 39 S.W.3d at 879 (citation omitted). Though the omission of a legal description may have impacted the ability to record the Separation Judgment as to effectively impart notice of the conveyance of title, said omission had no impact on the legal effectiveness of the Separation Judgment to convey title in the Real Estate to Ms. Bakewell. The Separation Judgment clearly identified the Real Estate by its popular address, and Mr. Bakewell does not argue that the Separation Judgment is vague or ambiguous in its description of the Real Estate.

Our conclusion that the Separation Judgment included sufficient language to convey title in the Real Estate to Ms. Bakewell distinguishes this case from *DeWitt* where the Supreme Court found the language of a divorce decree insufficient to convey wife's interest in real estate without an affirmative act by her. 667 S.W.2d at 706. In *DeWitt,* husband and wife entered into a property settlement agreement which required Wife to execute a quitclaim deed to husband. *Id.* at 705. The divorce decree incorporated the property settlement agreement and ordered its performance. *Id.* at 705–06. The Supreme Court observed that the "decree merely orders the parties to do certain acts and does not automatically convey the property by its plain language." *Id.* at 706. Thus, the "decree of divorce was insufficient in its language to effectuate a conveyance without an affirmative act by [the parties]." *Id.*

The Separation Judgment in this case is also distinguishable from the decree in *Ronollo.* 775 S.W.2d 121. In *Ronollo,* a decree of legal separation ordered real estate to be sold and the proceeds to be divided equally. *Id.* at 122. Wife was ordered to pay her attorney's fees from her share of the proceeds. *Id.* Wife executed a deed of trust against the real estate in favor of her attorney to secure her payment obligation. *Id.* Five months later, the trial court converted the decree of legal separation to a decree of dissolution. *Id.* at 123. Five years later, wife and her new husband filed a petition seeking to set aside the deed of trust. *Id.* In finding that the decree of legal separation did not destroy the tenancy by the entirety relationship, the Supreme Court reasoned:

> Here, the [separation] decree did not alter the manner in which Mr. and Mrs. Ronollo held the property. The trial court did not set apart the real estate to either spouse but simply ordered the sale and a division of net proceeds thereafter. The language of the decree does not purport to affect the estate until the parties receive the proceeds. Conse-

quently, [until entry of a decree of dissolution of marriage], Mr. and Mrs. Ronollo remained owners of the real estate as tenants by the entirety.

*Id.* at 124. Because the deed of trust was extended by wife while the real estate was still tenancy by the entirety property, it was void. *Id.*

Here, in sharp contrast to the decrees involved in *DeWitt* and *Ronollo,* the Separation Judgment unequivocally altered the manner in which the Bakewells held title to the Real Estate, thus severing the tenancy by the entirety without need for further action by the parties. Accordingly, we find that Mr. Bakewell was divested of any and all interest in the Real Estate upon entry of the Separation Judgment. The Quitclaim Deed was neither required nor essential to destroy the tenancy by the entirety in the Real Estate. Thus, Mr. Bakewell's challenges to the trial court's alleged "reformation" of the Quitclaim Deed are unavailing and immaterial.[13]

▮ Mr. Bakewell also argues in his first three points relied on that he never waived his marital inheritance rights. Obviously, the materiality of this contention is rendered moot by our determination that the Separation Judgment operated to divide the Bakewell's marital property as required by section 452.330.1, and did so in such a fashion as to effectively convey title without the need for further action by the parties. Under these circumstances, a "waiver" of marital inheritance rights is not required, as upon entry of the Separation Judgment, the marital property was divided, and no longer jointly owned. In any event, the Separation Judgment was entered consistent with a property settlement agreement reached between the Bakewells, permitting the intent to waive marital inheritance rights to be implied.

Points One, Two, and Three are denied.

### Point IV

▮ For his fourth point, Mr. Bakewell claims that the trial court erred in upholding CitiFinancial's Deed of Trust "because the recording system exists to prevent the improper incumbrance of property in that the legal separation which was a matter of record in the court of the couny [sic] where the property was located, as well as the deed itself, gave notice that [Ms. Bakewell] was not a single person as she alleged."

In light of our determination that the Separation Judgment terminated any interest that Mr. Bakewell had in the Real Estate, he lacks standing to challenge the validity of the Deed of Trust. *See Nigro v. Ashley,* 690 S.W.2d 410, 417 (Mo.App. W.D.1984) (where plaintiffs have no interest in the property, they have no standing); *Crumbaker v. Zadow,* 151 S.W.3d 94, 96 (Mo.App. E.D.2004) ("Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute[.]").

Point Four is denied.

### Point V

▮ For his fifth and final point, Mr. Bakewell argues that the trial court erred when it awarded Ms. Bakewell's Deferred Compensation Account to Breitenstein because federal law requires qualified deferred compensation plans to be payable to

---

**13.** Mr. Bakewell cites *Anderson v. Shelter Mutual Insurance Company,* 127 S.W.3d 698, 702 (Mo.App. E.D.2004), for the proposition that a trial court cannot *modify a judgment,* or as Mr. Bakewell argues, a Quitclaim Deed executed pursuant to a judgment, which had become final to add pre-judgment interest. *Anderson* simply has no application to the present case in light of our determination that the Separation Judgment, not the Quitclaim Deed, destroyed the tenancy by the entirety. Moreover, it is apparent from the record that the trial court did not modify either the Separation Judgment or the Quitclaim Deed.

the participant's surviving spouse unless the surviving spouse has waived that right.

■ Mr. Bakewell does not argue that the Separation Judgment failed to effectively convey title to the Deferred Compensation Account to Ms. Bakewell at the time of its entry. The Separation Judgment awarded the Deferred Compensation Account to Ms. Bakewell as her "sole and separate property" to which Mr. Bakewell has "no right, title or interest therein." Thus, like Mr. Bakewell's claim to the Real Estate, any claim Mr. Bakewell may have had to the Deferred Compensation Account was extinguished by the Separation Judgment. "A judgment of dissolution of marriage or of legal separation is final when entered" and judgment "as it affects distribution of marital property shall be a final judgment not subject to modification." Section 452.360. "A party cannot seek redistribution of property covered by the decree." *Green*, 341 S.W.3d at 174.

Moreover, Mr. Bakewell does not contest that the Separation Judgment was entered following, and consistent with, the Bakewells' negotiated property settlement agreement. Mr. Bakewell offers us no authority to suggest that under these circumstances, his rights as a surviving spouse in the Deferred Compensation Account were not waived.

Point Five is denied.

### Conclusion

The trial court's Judgment is affirmed.

All concur.